HEINZ BINDER, #87908
ROBERT G. HARRIS, #124678
JULIE H. ROME-BANKS, #142364
ROYA SHAKOORI, #236383
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone:  (408)295-1700
Facsimile:  (408) 295-1531
email: heinz@bindermalter.com
email: rob@bindermalter.com
email: julie@bindermalter.com
email: roya@bindermalter.com


Attorneys for Debtor
Alpha Factors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5**

| | |
|---|---|
| In re | Case No. 08-54475-SLJ |
| ALPHA FACTORS, dba Century 21 Alpha, a California corporation, | Chapter 11 |
| Debtor. | |

<u>**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION[1]**</u>
<u>**(November 29, 2010)**</u>

**I.      INTRODUCTION**

Debtor Alpha Factors, dba Century 21 Alpha, a California corporation ("Debtor")

filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy

Code on August 15, 2008 with the United States Bankruptcy Court for the Northern

District of California.  The Debtor hereby submits to creditors its proposed Plan of

Reorganization (the "Plan").  The Plan generally provides that unsecured creditors shall

---

[1] Proposed in conjunction with related bankruptcy case of <u>In re Edward Zimbrick and Daija Zimbrick</u>, Case

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

share pro-rata in a fund for payment of allowed claims of $500,000.  Since creditors will receive more on account of their claims through this Plan than they would if this case was converted to chapter 7 (i.e. straight bankruptcy) and the Debtor's assets were liquidated by a chapter 7 trustee, the Debtor believes that this Plan is in the best interest of all its creditors.

The Plan must receive creditor approval and the Court must find that it meets the requirements of the law.  If this Plan is not accepted and approved then (1) the case may be dismissed out of the Bankruptcy Court; (2) the Debtor may attempt to draft another Plan; or (3) the case to go into straight bankruptcy (i.e., Chapter 7) with the assets of the Debtor being sold in liquidation and the proceeds distributed in accordance with the law.

Creditors are reminded that the Debtor has prepared and filed a Disclosure Statement that provides information about the Debtor and this Plan.

## II.    DEFINITIONS

As used in the Plan and in the Disclosure Statement, the following definitions shall apply:

2.1    "Administrative Claim" means a Claim for any cost or expense of administration of a kind specified in 11 U.S.C. §503(b), including any actual and necessary costs and expenses of preserving the Bankruptcy Estate incurred on or after the Petition Date and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under 11 U.S.C. §365, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 2 of 32

services and reimbursement of expenses allowed by the Bankruptcy Court under 11 U.S.C. §§ 330 and 331 or otherwise.

2.2 "Allowed" or "Allowed Amount" means the amount in which any Claim is allowed. Unless otherwise expressly required by the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the Petition Date. Neither the foregoing nor any other provision in this Plan is intended to limit the right of an over-secured creditor to assert, and have Allowed as part of its Claim, interest on such Claim and any reasonable fees, costs, expenses or charges, as provided for under the agreement or State statute under which such Claim arose, to the fullest extent allowed by 11 U.S.C. §506(b).

2.3 "Allowed Claim" means a Claim: (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court by the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no Proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor' Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if: (a) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order; or (b) the Claim has already been satisfied.

2.4 "Allowed Interest" means the equity interest of Edward Zimbrick in the Debtor.

2.5 "Allowed Secured Claim" means a Secured Claim to the extent that such Secured Claim constitutes an Allowed Claim.

2.6 "Allowed Unsecured Claim" means an Allowed Claim that is not secured and includes the unsecured and under-secured claims but excludes Administrative Claims, Priority Claims, and Tax Claims.

2.7 "Assets" means any and all assets, property, property interests and property rights of the Debtor, whether tangible, intangible, vested, contingent, exclusive, joint, real, personal or mixed, that constitute property of the Debtor's Chapter 11 estate, including, without limitation, the Debtor's right, title and interest in and to real property and equipment leases, as well as sales commissions for pending real estate transactions.

2.8 "Avoidance Actions" mean causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

2.9 "Bankruptcy Case" means the bankruptcy case commenced by the Debtor' filing with the Bankruptcy Court of their voluntary petition under chapter 11 of the Bankruptcy Code.

2.10 "Bankruptcy Code" means Title 11, United States Code, § 101, *et seq.*

2.11 "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Northern District of California, San Jose Division.

2.12 "Bankruptcy Estate" means the estate created by the commencement of the Bankruptcy Case and comprised of the property described in 11 U.S.C. §541.

2.13 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the bankruptcy

Case: 08-54475    Doc# 198    Filed: 11/29/10    Entered: 11/29/10 15:28:02    Page 4 of 32

cases.

2.14 "Century 21" shall mean franchisor Century 21 Real Estate LLC.

2.15 "CIGA" shall mean the California Insurance Guarantee Association, established under the California Insurance Code to administer and discharge claims in the event of an insurance company's insolvency. As it relates to the Debtor, CIGA took over after Legion Insurance Company, the issuer of Debtor's pre-petition insurance policy, went into liquidation.

2.16 "Claim" shall mean means any (a) right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured.

2.17 "Claims Bar Date" means with respect to Claims other than those held by governmental units, December 16, 2008, or such other date that the Court set by order regarding a rejected executory contract or rejected lease.

2.18 "Claims Objection Date" means the date 90 days after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Reorganized Debtor.

2.19 "Code" shall mean Title 11, United States Code, Sections 101-1330.

2.20 "Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

2.21 "Confirmation Date" means the date on which the Bankruptcy Court

Case: 08-54475    Doc# 198    Filed: 11/29/10    Entered: 11/29/10 15:28:02    Page 5 of 32

enters the Order of Confirmation.

2.22 "Confirmation Hearing" means the hearing to be held by the Court to consider confirmation of this Plan, as contemplated by § 1128(a) of the Code.

2.23 "Confirmation Order" means the order entered by the Court confirming this Plan pursuant to 11 U.S.C. § 1129.

2.24 "Court" shall mean the United States Bankruptcy Court for the Northern District of California, Division 5, acting in the Reorganization Case.

2.25 "Creditor" means any entity holding a Claim against the Debtor.

2.26 "Dalton Matter" shall mean the civil action styled as <u>VERA DALTON, an individual and WILLIAM CORBIN, an individual, Plaintiffs, vs. CENTURY 21 ALPHA, business form unknown, JOANIE FRANCIS, an individual, RICH ROBINSON, an individual, DIANE RENEE LAMBERT and DOES 1 through 50, inclusive, and related cross-actions</u>, Santa Clara County Superior Court Number 1-03-CV011268 regarding the real property located at 17360 Holiday Drive, Morgan Hill, California  and related appeals and all attorneys' fees and costs claimed by the parties therein.

2.27 "Debtor" shall mean Alpha Factors

2.28 "Debtor's Professionals" mean, collectively, reorganization counsel Binder & Malter, LLP,  and special counsel Adelson, Hess & Kelly and/or their successors, if any; and such other professionals whose employment by the Debtor prior to Confirmation is approved by order of the Bankruptcy Court, if any; and following the Effective Date, any professionals engaged by the Reorganized Debtor to represent or assist it in fulfilling its duties and obligations as the Reorganized Debtor under the Plan, including such accountant(s) as the Reorganized Debtor may select to complete the

Case: 08-54475    Doc# 198    Filed: 11/29/10    Entered: 11/29/10 15:28:02    Page 6 of 32

Debtor's tax returns and other required filings and such legal professionals as might be appropriate to assist in administering the Plan, the Bankruptcy Case and the Bankruptcy Estate.

2.29    "Disputed Claim" means a Claim against the Debtor: (a) as to which a Proof of Claim has not been timely filed and that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order.

2.30    "Disputed Claims Reserve Account" means a segregated bank account maintained for the purpose of holding cash attributable to Disputed Claims and administered by the Reorganized Debtor consistent with the provisions of 11 U.S.C. §345.

2.31    "Distribution(s)" means the Cash to be distributed under the Plan to holders of Allowed Claims.

2.32    "Distribution Date" means (i) in the case of the first Distribution Date, not later than one year after the Effective Date,  and (ii) in the case of subsequent Distribution Dates, on each anniversary date thereafter until the Plan Distribution Account proceeds have been distributed to creditors with Allowed Claims pursuant to the Plan.

2.33    "Effective Date" means thirty (30) days after the Confirmation Order becomes a Final Order.  A reference to the Effective Date that, in the context, contemplates a specific time of day, shall mean 11:00 a.m., San Jose, California, time,

Case: 08-54475    Doc# 198    Filed: 11/29/10    Entered: 11/29/10 15:28:02    Page 7 of 32

on the Effective Date.

2.34  "Final Order" means an order or judgment that has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand, or certiorari is pending or (b) any appeal taken or petition for certiorari has been resolved by the highest court to which the order of judgment was appealed or from which certiorari was sought.

2.35  "Interest" means the legal, equitable and contractual rights accruing to the owner or holder of any equity Interest in the Debtor.

2.36  "Lien" means any Claim, Interest, encumbrance, security interest, restriction, charge or assessment, of every kind, nature and description, against, in or upon property, whether recorded or unrecorded, fixed or contingent, perfected or unperfected, possessory or non-possessory, known or unknown.

2.37  "Local Rules" means the Local Rules of the United States District Court for the Northern District of California, as amended, as applicable to the Bankruptcy Cases.

2.38  "Notice Parties" mean the Reorganized Debtor, counsel for the Reorganized Debtor, counsel for Zimbrick, the United States Trustee, and any creditor who delivers a notice to counsel for the Reorganized Debtor requesting to be added as a notice party; provided however that any Creditor whose Claim has been paid in full shall no longer be a Notice Party.

2.39  "Notice Procedure  means the procedure described in Article III, D, 9 below.

2.40  "Order of Confirmation" means the order entered by the Bankruptcy Court

approving and confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.41 "Person" means an individual, sole proprietorship, partnership, corporation, limited liability company, trust, estate, unincorporated organization or a government or agency or political subdivision thereof, or any other entity or organization.

2.42 "Petition Date" means August 15, 2008, the date on which the Debtor filed its voluntary petition under chapter 11 initiating the Bankruptcy Case and on which date relief was ordered in the Bankruptcy Case.

2.43 "Plan" shall mean this Plan of Reorganization in its present form or as it may be amended and/or supplemented.

2.44 "Plan Distribution Account" means a bank account to be established by the Debtor for purposes of making quarterly distributions on Allowed Claims pursuant to the Plan.

2.45 "Priority Claim" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

2.46 "Pruneyard" means creditor CA-Pruneyard Ltd. Partnership, a former landlord of the Debtor, whose lease was personally guaranteed by Zimbrick.

2.47 "Rejection Claim" means an Allowed Unsecured Claim arising from the Debtor' rejection of any unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

2.48 "Rejection Claims Bar Date" means, with the exception of any bar date

Case: 08-54475    Doc# 198    Filed: 11/29/10    Entered: 11/29/10 15:28:02    Page 9 of 32

which already has been established by Court order, the earlier of: (a) thirty (30) days following the Effective Date; or (b) with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order, thirty (30) days following the entry of such Final Order.

2.49 "Reorganized Debtor" mean the Debtor from and after the Effective Date.

2.50 "Retained Claims" mean any and all claims, defenses and rights of the Debtor and the Reorganized Debtor against any Person as of the Effective Date, including, without limitation, Avoidance Actions and those Retained Claims referred to in Article IX of the Plan.

2.51 "Schedules" means the Debtor' schedules of assets and liabilities consisting of Schedule "A" through "H" filed with the Bankruptcy Court pursuant to 11 U.S.C. §521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b) and the amendments filed thereto, as may be further amended at anytime.

2.52 "Secured Claim" means a Claim arising prior to the Petition Date to the extent that such Claim (a) is secured by a Lien on all or any portion of the Assets that is not void or avoidable under the Code or other applicable law, (b) is subject to set off under §553 of the Code (in each case only to the extent of the value of the Interest of the holder of such Claim in the Debtor's Interest in the Assets or the amount of such set off, as the case may be or (c) is the subject to a valid, timely election, made by the class of which such Claim is a part, for application of the treatment contemplated by 11 U.S.C.. §1111(b)(2) of the Code, together with such interest, reasonable fees, costs and charges as may be allowed by the Court pursuant to 11 U.S.C. §506(b).

2.53 "Substantially Consummated" shall mean with respect to this Plan that (i)

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 10 of 32

the Effective Date of the Plan has occurred; (ii) the Debtor has funded the first two payments of $25,000.00 each into the Plan Distribution Account, and (iii) the Debtor has made the first distribution to creditors with Allowed Claims from the Plan Distribution Account.

2.54    "Tax Claim" means any pre-petition Allowed Claim against the Debtor entitled to priority pursuant to 11 U.S.C. §507(a)(8).  Tax Claims do not include secured real property taxes.

2.55    "Timely Filed Unsecured Claim" means an unsecured Claim: (a) listed in the Debtor's Schedules (other than if listed as disputed, contingent or unliquidated); (b) filed by the Claims Bar Date or other applicable bar date established in the cases for filing a Claim; or (c) otherwise determined to be timely by order of the Bankruptcy Court.

2.56    "Zimbrick" shall refer to Edward Zimbrick, President of the Debtor and the Court appointed responsible individual for the Debtor.

2.57    "Zimbrick Case" means the related chapter 11 bankruptcy case filed by the president of the Debtor, Edward Zimbrick, and his wife, Daija Zimbrick, filed on August 15, 2008 as case number 08-54477 and now pending before the Court.

## III.    PLAN OF REORGANIZATION

A.    Plan Objective

The objective of the Plan is to provide for the satisfaction of all Claims against and Interests in the Debtor.  The Plan divides creditors and equity security holders into classes based on their Claims and Interests and provides for the satisfaction of creditors' Claims through the continued operations of the Debtor.

B.    Classification and Treatment of Claims and Interests

The treatment of Claims and Interests described below applies only to Allowed Claims and Allowed Interests. Claims or Interests that are subject to a pending objection before the Court or that have not been allowed pursuant to a Final Order or a stipulation consented to by the Debtor and the claimant will receive Distributions under the Plan only if and after they become Allowed Claims or Allowed Interests.

3.1.  Non-Classified Claims:

Section 1123(a)(1) of the Code provides that certain Claims, including administrative expense Claims for unpaid post-petition goods, services or taxes and unsecured tax Claims by governmental units for pre-petition obligations, are not classified under the Plan except to the extent that a creditor has agreed to different treatment under the Plan.

The holders of Allowed Claims entitled to priority as an administrative expense, including professionals, shall receive cash payments in the amount of such Allowed Claims on the Effective Date, unless the claimants agree otherwise. Professionals employed by the Debtor prior to Confirmation during this Chapter 11 case shall receive, in consideration of fees and expenses accrued prior to the Confirmation Date, Cash in the amount awarded to such professionals by Order of the Court. The source of any Cash to be paid on account of professionals employed by the Debtor shall come from the Debtor's pre- and post-confirmation operations.

Also included in non-classified Claims are any post-petition obligations owing to the Internal Revenue Service and California Franchise Tax Board. The Debtor does not believe there to be any such non-classified by governmental agencies.

As of the date of this Plan, the Debtor estimates that the total amount of non-

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 12 of 32

classified administrative Claims to be paid upon Confirmation from property of the Debtor will be approximately $135,000 to $145,000. The exact amount to be paid to the Debtor's attorneys will depend on a variety of factors including the number of court hearings remaining prior to Confirmation and whether or not the Disclosure Statement and Plan are opposed by any creditors or will require any amendments.  These fees shall only be payable upon order of the Court after the submission of a fee application. Other than Century 21, which has agreed to a different treatment of its Allowed Administrative Claim, The Debtor is unaware of any other administrative expense Claims.

      3.2.    <u>Classified Claims</u>:

          The classified Claims are summarized as follows:

          a.     <u>Class One</u>: Century 21 Claims.

          b.     <u>Class Two</u>:    Dalton Matter Claims.

          c.     <u>Class Three</u>:  Secured Claims.

          d.     <u>Class Four</u>:    General Unsecured, Non-Insider Claims.

          e.     <u>Class Five</u>:    Insider Claims.

          f.     <u>Class Six</u>:    Equity Interests.

   a.   <u>Class One (Century 21 Claims)</u>:

          i.     <u>In General</u>.  Class One consists of the Allowed Unsecured Claims and Administrative Claims of Century 21, the Debtor's franchisor, pursuant to the Franchise  Agreement between the Debtor and Century 21.  This includes (1) ongoing Administrative Claims for National Advertising Fees ("NAF"), which shall be paid in accordance with the Franchise Agreement; (2) Administrative Claims for "Deferred

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 13 of 32

Fees" consisting of deferred royalties owed by the Debtor to Century 21 which are due and owing by the Debtor from the Petition Date through April 7, 2009, plus such amounts of deferred royalty fees which may accumulate from April 8, 2009 through October 31, 2009; and, (3) additional post-petition royalties as of the Effective Date. As set forth in the approved STIPULATION REGARDING ALLOWANCE OF ADMINISTRATIVE CLAIM ON BEHALF OF CENTURY 21 REAL ESTATE LLC ("Stipulation"), commencing January 1, 2010, the Debtor shall pay Century 21 a franchise service fee equal to 7% as and when set forth in the Franchise Agreement, with 1% of said fee being applied to the accrued Deferred Fees until the full amount of the Deferred Fees is paid in full. Moreover, 25% of any CIB payments to which the Debtor is entitled under the Franchise Agreement after January 1, 2010 shall be applied to payment of the Deferred Fees until the full amount of the Deferred Fees is paid in full. On the Effective Date, Century 21 withdraws its Proof of Claim in the amount of $250,000.00 previously filed in this Bankruptcy Case on September 8, 2008 and Century 21 shall hold no other pre-petition Allowed Claim. This class is impaired under the Plan.

ii.    <u>Assumption of Franchise Agreement:</u>  On the Effective Date, the Debtor assumes its Franchise Agreement with Century 21, as previously amended by the parties and as modified by the Stipulation.

iii.    <u>Payment of Claims of Century 21</u>:  All payments to Century 21 shall be made in lawful money of the United States of America without set off, offset, recoupement, deduction or counterclaim of any kind whatsoever.

iv.    <u>Default to Century 21</u>:  The Debtor's failure to make a payment on

Case: 08-54475    Doc# 198    Filed: 11/29/10    Entered: 11/29/10 15:28:02    Page 14 of 32

account of any of the Deferred Fees shall constitute an Event of Default in accordance with the Master Addendum and the Franchise Agreement.

    b.    <u>Class Two (Dalton Matter Claims)</u>:

    Class Two consists of the claims of Vera Dalton, William Corbin and Dianne Lambert and their counsel. Holders of Class Two Claims shall receive an assignment of the Debtor's rights and coverage against CIGA in satisfaction of the Class Two Allowed Claims. The Debtor shall dismiss its pending appeal in the Dalton Matter and shall execute such documents as may reasonably be needed to aid the holders of the Class Two Claims in their pursuit of payment from CIGA. The Class Two claimants shall be entitled to no other source of recovery from the Debtor. This class is impaired under the Plan.

    c.    <u>Class Three (Allowed Secured Claims of (i) Thang M. Nguyen and Ashley Huong Le, (ii) County of Santa Clara Tax Collector, and (iii) and other Allowed Secured Claims)</u>

    Class Three consists of the secured claims of (i) Thang M. Nguyen and & Ashley Huoung Le ("Nguyen and Le"), (ii) the County of Santa Clara Tax Collector (the "County") and (iii) any other Allowed Secured Claims.

    Nguyen and Lee hold an Allowed Class Three Secured Claim which was scheduled by the Debtor in the amount of $25,000.00. Nguyen and Le shall receive payment of their Allowed Secured Claim consistent with their legal, equitable, and contractual rights unaltered, including their retention of any lien to the extent not avoidable Upon the full payment of any the Allowed Class Three Claim of Nguyen and Lee, any and all liens or security interests of any nature

whatsoever held by Nguyen and Lee shall be deemed discharged.  Nguyen and Le's claim is not impaired under the Plan.

The County has filed a proof of Claim as a secured Claim in the amount of $882.94 for a recorded tax lien.  The County shall retain its lien.  The County shall receive payment in full of its Allowed Secured Claim with statutory interest not later than 30 days after the Effective Date.  Upon payment in full of the Allowed Secured Claim of the County, any and all liens or security interests of any nature whatsoever held by the County shall be deemed discharged.  The County's claim is not impaired under the Plan.

The Debtor does not believe that there are other any holders of Allowed Secured Claims in Class Three.  To the extent that any such additional Allowed Secured Claims exist, however, such Allowed Secured Claims are not impaired under the Plan, as the Plan leaves their legal, equitable, and contractual rights unaltered, including their retention of any lien to the extent not avoidable. Each such Allowed Secured Claim shall be considered to be a separate subclass within Class Three, and each such subclass shall be deemed to be a separate Class for purposes of the Plan.  Upon the full payment of any Allowed Class Three Claims, any and all liens or security interests of any nature whatsoever held by each Class Three Creditor shall be deemed discharged.  This class is unimpaired under the Plan.

d.  Class Four (General Unsecured Claims)

Class Four consists of the Allowed Claims of general unsecured, non-priority creditors who are not "insiders", as that term is defined in 11 U.S.C. §101(31). The total amount of  scheduled and filed Class Four Claims is approximately $6.5 million.  After reduction for  Class Five Insider Claims of $2.96 million, this leaves a total

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 16 of 32

of Class Four Claims of approximately $3.6 million. Of this amount, the Debtor anticipates that the $250,000 Claim of Century 21 will be waived pursuant to the treatment of Century 21 under Class One of the Plan. In addition, the amount of Class Four Claims that are wholly or partly disputed by the Debtor and are expected to be disallowed is an additional $1.53 million. The Debtor therefore anticipates that following Claim Objections and after the Effective Date, the total Allowed Class Four Claims will be approximately $1.820 million.

Holders of Allowed Class Four Claims shall be entitled to receive pro-rata Distributions under the Plan from the Plan Distribution Account for a period of 5 years. The Debtor will pay $25,000 per quarter for a period of 5 years into the Plan Distribution Account and will make pro-rata payments to creditors holding Allowed Class Four Claims from the Plan Distribution Account. This class is impaired under the Plan.

e. <u>Class Five  (Insider Claims)</u>:

Class Five consists of the Allowed Claims of insiders, including Edward Zimbrick in the amount of $2,389,310.82 and Daija Zimbrick in the amount of $537,500.00. Under the Plan, the insiders shall receive nothing on account of their claims until the Plan is fully performed. Notwithstanding, the Debtor shall otherwise assume all obligations of indemnification under its Employment Agreement with Edward Zimbrick as amended. The Zimbricks' claims for pre-petition wages and loans made to the Debtor shall be subordinated to the payment of all other classes of Allowed Claims as provided for in this Plan. The Class Five Claims shall remain obligations in full of the Debtor and shall not otherwise be discharged under the Plan. This class is impaired under the Plan.

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 17 of 32

f.    Class Six (Equity Interests):

Class Six consists of the equity interests of Edward Zimbrick, holder of 100% of the issued shares of the Debtor.  Mr. Zimbrick shall retain his stock and all rights thereunder under the Plan, except as expressly modified by the Plan.  This class is not impaired under the Plan.

C.    Means of Effectuating the Plan

The Debtor shall effectuate the Plan through its continued operations as a real estate broker franchised by Century 21 and all related business activities.  The Debtor shall give notice of the Effective Date of the Plan.  The Debtor shall pay $25,000 per quarter for a period of 5 years into the Plan Distribution Account (for a total of $500,000) and will make pro-rata payments to creditors holding Allowed Claims from the Plan Distribution Account on an annual basis.  The first payment into the Plan Distribution Account shall be made by the Debtor not later than the first business day of the first calendar quarter following the Effective Date of the Plan.  Payments by the Debtor into the Plan Distribution Account shall continue to be made on the first business day of each calendar quarter thereafter.

Distributions to creditors shall be made pro-rata from the Plan Distribution Account (after making the appropriate reserves for the Disputed Claims Reserve Account) on the Distribution Dates.  The first Distribution Date shall be not later than one year after the Effective Date and subsequent Distribution Dates shall be on each anniversary date thereafter until the Plan Distribution Account proceeds have been distributed to creditors with Allowed Claims pursuant to the Plan.  The Debtor shall not

use the funds in the Plan Distribution Account for its costs of operations.  The Reorganized Debtor shall act as the Disbursing Agent under this Plan of Reorganization.

The Reorganized Debtor shall be entitled to defer up to two quarterly payments into the Plan Distribution Account under the term of this Plan, which deferrals may last until the following calendar quarter, provide the Debtor shall give notice before the due date of such quarterly payments that the Debtor seeks to defer.

Pursuant to Rule 3003 of the Federal Rules of Bankruptcy Procedure and the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines, December 16, 2008 was the last day for creditors who are not governmental units to file a timely proof of claim; for governmental units the last day was 180 days after the Petition Date or February 11, 2009  (the "Claims Bar Date").  The Debtor will review all Claims, and if necessary, file objections to the Claims.  Under the Plan, the Debtor has the authority to object to Disputed Claims.  All objections to Disputed Claims must be timely filed by the Debtor within ninety (90) days following the Effective Date or such objections shall be waived and forever barred and the Claim shall be allowed as an Allowed Claim.  The Debtor anticipates filing objections to Claims based upon (i) duplicate Claims; (ii) late filed Claims; (iii) Claims that lack supporting documentation; (iv) Claims that do not include a calculation of damages; (v) Claims of former lessors of the Debtor that do not provide evidence of mitigation with their proof of Claim; and (v)   for any and all other factual or legal objections that may be applicable to a particular proof of Claim filed in this case.

D.    Post-Confirmation Salary of Edward Zimbrick

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 19 of 32

On the Effective Date, the Debtor shall pay Edward Zimbrick a monthly salary of $14,000 plus the following: (i) provide health coverage for Zimbrick and his family; (ii) provide Zimbrick with a company car or automobile stipend in lieu thereof; and (iii) pay all of Zimbricks' post-petition and post-confirmation professional fees that are incurred for services performed in connection with the Zimbrick Case that are not satisfied from cash that the Zimbricks have available on the Effective Date. Edward Zimbrick's monthly salary shall increase approximately 10% per year to take into account expected increases in secured debt payments and property taxes and Zimbrick's salary may be further adjusted so that Zimbrick will not receive a salary from the Debtor that is less than the amount necessary to pay Zimbrick's secured debt obligations, reasonable living expenses and plan payments in the Zimbrick Case.

E.    Distribution Procedures:

The following distribution procedures shall apply to Distributions under the Plan:

1.    Distribution Addresses. Unless a Creditor has provided the Debtor with written notice of a different address, Distributions shall be sent to Creditors at the address set forth in the Proofs of Claim filed with the Bankruptcy Court. If no Proof of Claim has been filed with respect to a particular Claim, the Distribution shall be mailed to the address set forth in the Schedules filed by the Debtor.

2.    Withholding Taxes. The Reorganized Debtor shall not be required to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims. The Reorganized Debtor shall comply with all reporting obligations imposed on them by any governmental unit with respect to withholding and related taxes.

3.     <u>De Minimis Distributions.</u> Notwithstanding any other provision of the Plan, distributions of less than $100.00 need not be made on account of any Allowed Claim provided, however, that Distributions that would otherwise be made but for this provision shall carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled to is at least $100.00, at which time the cumulative amount of such Distributions shall be paid to such holder.

4.     <u>Unclaimed Distributions.</u> Any cash Distributions that remain unclaimed or un-negotiated for sixty (60) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry), (i) shall be included in the next subsequent quarterly Distribution to all other creditors with Allowed Claims, or (ii) if the Plan has concluded, shall become the property of the Reorganized Debtor.  The Reorganized Debtor shall make no further Distributions to any Creditor with an Unclaimed Distribution and such Creditor shall have no further right  to the Unclaimed Distribution or any future Distributions under this Plan.

5.     <u>Revesting of Property of the Estate.</u> On the Effective Date, all property of the Debtor and the Bankruptcy Estate shall vest in the Reorganized Debtor, free and clear of any and all liens, encumbrances, Claims of Creditors except as otherwise provided in the Plan.

6.     <u>Tax Returns and Taxes.</u>  The Reorganized Debtor shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtor and the Reorganized Debtor on a timely basis (other than Tax Claims provided for under the Plan).  With respect to Allowed Claims based on accrued real property

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 21 of
32

taxes assessed against and secured, such Claims shall be paid with interest and penalties as may be Allowed, after each such property is sold.   The Debtor is an Internal Revenue Code Subchapter S corporation. As such, the Debtor's corporate profits and losses pass through to its sole shareholder, Mr. Zimbrick.  After the Effective Date, the Debtor shall continue to pay all pass through taxes associated with corporate profits in the ordinary course of business.

   7. <u>Further Orders.</u> Upon motion by the Reorganized Debtor, on not less than fifteen (15) days' notice to the Notice Parties, or such shorter notice as the Court may order for cause, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

   8. <u>Post-Confirmation Compensation and Reimbursement of Professionals.</u> All professionals employed by the Reorganized Debtor after the Confirmation Date shall be entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis without notice.

   9. <u>Post-Confirmation Notice Procedure.</u>  Whenever the Plan requires a Person to comply with the Notice Procedure, such Person seeking the particular relief shall be required to serve a written notice on the Notice Parties of the proposed action. Such Person shall be authorized to take any action proposed to be taken in such notice fifteen (15) days after service of such notice unless, before the expiration of such fifteen (15)-day period, a recipient Notice Party has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection within thirty (30) days after the filing of such objection and upon not less than twenty-one (21) days notice to all Notice Parties.  If any such objection is filed, the Person seeking the

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 22 of 32

particular relief shall not take the proposed action unless the Bankruptcy Court approves such action or the objecting party withdraws the objection.

10. <u>Post-Confirmation Reports, Fees and Final Decree.</u>  Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtor shall pay to the United States Trustee the quarterly fee for such quarter until this Case is converted, dismissed or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).  Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Reorganized Debtor shall file and serve upon the United States Trustee a quarterly post-confirmation status report in substantially the form provided by the United States Trustee.  Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.  After the Bankruptcy Estate is fully administered, the Reorganized Debtor shall file, and serve on the Notice Parties, an application for entry of the Final Decree.

F.    <u>Feasibility of the Plan:</u>  The Debtor believes that the Plan is feasible due to the anticipated cash flow generated by pending and future real estate commissions from sales of real property.  The Debtor believes that the anticipated cash flow will be sufficient to pay the quarterly payment of $25,000.00 into the Plan Distribution Account.

**IV.    CLASSES IMPAIRED BY THE PLAN**

Classes One, Two, Four, and Five are impaired under the Plan.

**V.    PLAN MODIFICATION**

Only the Plan proponent may, with Court approval, modify the Plan.  Only

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 23 of 32

modifications that do not materially and adversely effect creditors are permitted.  Before or after Confirmation, the Plan may be modified in accordance with the provisions of the Code.

## VI.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is the lessee under non-residential real property leases for its two business offices at 5978 Silver Creek Valley Road, Suite 50, San Jose, California, and 415 Hamilton Avenue, Campbell, California.  On the Effective Date, these leases shall be assumed in accordance with the provisions of Section 365 and Section 1123 of the Bankruptcy Code.  These leases were entered into after the Petition Date. The Debtor believes that the payments under both of these leases are current.

On the Effective Date, the Debtor shall also assume its Franchise Agreement with Century 21 as previously amended.

Also on the Effective Date, the Debtor shall commence payments and benefits to Edward Zimbrick as stated herein under the section entitled "Post Confirmation Salary of Edward Zimbrick" and assume all other obligations under the Employment Agreement with Edward Zimbrick as amended, except that the Class 5 Insider Claims of Edward and Daija Zimbrick for any pre-petition compensation and pre-petition loans to the Debtor shall be subordinated to the payment of all other classes of Allowed Claims as provided for in this Plan.

Except as expressly set forth herein or in a supplement to this Plan to be filed prior to the hearing on confirmation, all other leases and executory contracts to which the Debtor is a party and which have not previously been rejected by prior order of the Court shall be deemed rejected on the Effective Date.   Rejection Claims shall be

classified as Class 4 general unsecured Claims.

## VII.  PROOFS OF CLAIMS; OBJECTIONS

7.1     Ownership and Transfers of Claims.   The Reorganized Debtor shall be entitled to recognize and deal for all purposes with only those Creditors of record with the Bankruptcy Court as of the first Distribution Date.  For purposes of any Distribution under the Plan, the Reorganized Debtor and their professionals and the Responsible Person shall have no obligation to recognize any transfer of Claims after the first Distribution Date.

7.2     Amendments to Claims.  Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, Proofs of Claim: (a) may not be filed upon expiration of the applicable bar date; and (b) may not be amended later than thirty (30) days following the date of the notice of the Confirmation Date except for amendments to Proofs of Claim to decrease the amount or priority thereof; provided that the foregoing deadline shall not accord a Claim holder a right to amend a Claim that, pursuant to applicable law, is not subject to amendment.

7.3     Claim Objections.  An objection to a Claim shall be filed no later than the Claims Objection Date.  An objection to an Administrative Claim shall be filed no later than the Administrative Claims Objection Date.  Any party in interest may file an objection to a Claim or Administrative Claim.

7.4     Disputed Claims Reserve Account.  Subject to the next sentence, any cash that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder shall be set aside into the Disputed Claims

DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

Reserve Account.  Not later than fifteen (15) days after the Reorganized Debtor has notice that a Disputed Claim has been Allowed in whole or in part, the Reorganized Debtor shall distribute the cash deposited into the Disputed Claims Reserve Account on account of such Disputed Claim.

7.5    Distributions.  Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim or Interest that at such date or time is disputed, un-liquidated or contingent, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim or Interest is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly in accordance with the preceding Section.

## VIII.   CONDITIONS PRECEDENT

8.1    Conditions to the Effective Date.    The following are conditions precedent to the occurrence of the Effective Date, each of which may be waived in accordance with Section 7.2 of this Plan:

a.    There must be a Final Order of Confirmation in this case.

b.    There must be a Final Order of Confirmation in the Zimbrick Case.

8.2    Waiver of Conditions.    The conditions set forth in Section 7.1 of this Plan may not be waived except by the Debtor, which may waive, in its sole discretion, any one or more of such conditions without any notice to any Person, without leave or order of the Court and without any other formal action.

## IX.   PRESERVATION OF RETAINED CLAIMS

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan, Order of Confirmation or another order of the Court specifically and unambiguously so provides.  The failure of the Plan to refer to any particular Retained Claim is not and shall not be construed as a settlement, compromise, waiver, or release of any such Retained Claim.  All Retained Claims are hereby preserved and shall continue to remain valid after the Effective Date.  Retained Claims include, without limitation, (a) all claims of setoff and recoupment for security deposits of any current or former lessor of the Debtor, (b) all claims for listing agreements, sales commissions, leasing commissions or any other account receivable owed to the Debtor, (c) all claims against CIGA except to the extent the Debtor has assigned those claims, and (d)  Avoidance Actions.

## X.     DISCHARGE OF DEBTOR

Upon contribution of the total sum of $500,000 into the Plan Distribution Account and the distribution of the same to creditors of Allowed Claims in accordance with this Plan, the Debtor shall be entitled to a discharge of all claims that arose prior to the Effective Date except for the claims of Class 5 Insiders.

The rights afforded pursuant to the Plan and the treatment of all Claims and Equity Interests therein will be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, the Reorganized Debtor or any of their respective assets or properties, arising prior to the Effective Date. Pursuant to 11 U.S.C. §1141(d) and except as otherwise expressly specified in the Plan, upon the Effective Date, upon delivery of the sum of $500,000 to the Plan

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 27 of 32

Distribution Account, there shall be a discharge of all debts of, Claims against, and Liens on the Debtor, it's respective assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim with respect thereto was filed, whether the Claim is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution hereunder. Except as otherwise expressly specified in the Plan, upon delivery of the sum of $500,000 to the Plan Distribution Account, any holders of such discharge Claims will be precluded from asserting against the Debtor, the Reorganized Debtor, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before entry of the Confirmation Order.

## XI.     RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain jurisdiction of the Reorganization Case to ensure that the intent and purpose of the Plan is carried out and given effect.  Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

11.1    To classify, allow, or disallow Claims and to adjudicate all controversies concerning classification or allowance of any Claim.

11.2    To enforce performance of the Plan against the Debtor, any creditor and party in Interest.

11.3    To hear and determine all controversies, suits and disputes as may arise in connection with the interpretation or enforcement of the Plan.

11.4    To hear and determine all Claims arising from the rejection or

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 28 of 32

assumption and assignment of executory contracts, and to consider and consummate the rejection and termination or assumption and assignment thereof.

       11.5   To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claim.

       11.6   To adjudicate all Claims or an ownership Interest in any property of the Debtor or of the estate, or any proceeds thereof.

       11.7   To hear and determine all controversies, suits and disputes as may arise between or among the holders of any class of Claim, or between the holders of any class of Claim and the Debtor.

       11.8   To hear and determine all applications for allowance of compensation and objections to Claims.

       11.9   To hear and determine such matters and make such orders as are consistent with the Plan and as may be necessary or desirable to carry out the provisions thereof.

       11.10  To hear and determine any and all pending applications, adversary proceedings, and contested matters, if any.

       11.11  To enter an order closing the Reorganization Case upon submission of a declaration attesting to the Substantial Consummation of the Plan.

       11.12  To enter an order discharging the Debtor following completion of this Plan.

       11.13  Subject to the provisions of Section V. of this Plan, to modify this Plan or remedy any defect or omission therein or reconcile any inconsistency in the Confirmation Order or this Plan in such manner as may be necessary to carry out the

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 29 of 32

purposes and intents of this Plan to the extent authorized by this Plan.

11.14 If closed, the Bankruptcy Cases may be reopened at any time to facilitate the provisions of this Article.

## XII. NOTICES TO DEBTOR

Any notices which must be given to the Debtor under this Plan shall be given as follows:

| | |
|---|---|
| Debtor | Debtor's Counsel |
| Alpha Factors | Heinz Binder, Esq. |
| c/o Edward Zimbrick, President | Binder & Malter, LLP |
| 5978 Silver Creek Valley Road, Suite 50 | 2775 Park Avenue |
| San Jose, CA 95138 | Santa Clara, CA 95050 |
| Email: c21alpha@aol.com | Email: Heinz@bindermalter.com |

With copy to:
William C. Lewis, Esq.
510 Waverly Street
Palo Alto, CA 94301
email: wclewis@williamclewis.com

## XIII. CONCLUSION

13.1 Binding Effect of the Plan. The provisions of this Plan shall bind the Debtor and any Person or entity asserting a Claim against the Debtor whether or not the Claim or entity arose before or after the Petition Date, whether or not the Claim is impaired under the Plan, and whether or not such Person or entity has accepted the Plan.

13.2 Injunction. The Confirmation Order shall provide, and shall operate as, an injunction against the commencement or continuation of any action to collect, recover, or offset from the Debtor any Claim or Interest which is treated in the Plan except as otherwise permitted by this Plan or by Final Order. The Court shall have jurisdiction to determine an award of damages to the Debtor any violation of the injunction provided

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 30 of
32

for in this Plan or the Confirmation Order, including but not limited to compensatory damages, professional fees and expenses, and costs, and including exemplary damages for any willful violation of said injunction.

13.3    Vesting of Property of the Estate.   Except as provided in the Confirmation Order and in this Plan, on the Effective Date all of the Interests, property and tax attributes of the Debtor shall be vested in the Reorganized Debtor and shall be retained and used by the Reorganized Debtor as provided in this Plan, free and clear of all Claims, Liens, charges, and other Interests of any Person or entity arising before or after the commencement of this Bankruptcy Case.

13.4    Headings. The article and section headings used in this Plan are inserted for convenience and reference only and neither constitutes a part of this Plan nor in any manner affects the terms, provisions or interpretation of this Plan.

13.5    Severability. Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

13.6    Plan Controls Disclosure Statement. In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto) is inconsistent with or contrary to the provisions of the Disclosure Statement, the provisions of this Plan and the annexed exhibits shall control and take precedence.

13.7    Corporate Authority.  President Edward Zimbrick shall be authorized, on behalf of the Debtor to execute and deliver any documents, instruments or agreements required or contemplated by this Plan to be executed and delivered by the Debtor and shall be authorized on behalf of the Debtor to take such actions as may be necessary or

Case: 08-54475    Doc# 198    Filed: 11/29/10    Entered: 11/29/10 15:28:02    Page 31 of 32

appropriate to effectuate and further evidence and perfect the terms and conditions of this Plan.  Any documents, instruments or agreements required or contemplated under this Plan to be executed and delivered by the Debtor shall constitute the valid and binding act of the Debtor if executed and delivered in the manner prescribed above.

Dated: November 29, 2010                    ALPHA FACTORS

By: /s/  Edward Zimbrick
                                                    Edward Zimbrick, President

Dated: November 29, 2010                    BINDER & MALTER LLP

By: /s/ Julie H. Rome-Banks
                                                    Julie H. Rome-Banks
                                                    Attorneys for Debtor

F:\Clients\Alpha Factors\Pleading\Plan and Disclosure Statement\Plan of reorganization.ecf.doc

Case: 08-54475   Doc# 198   Filed: 11/29/10   Entered: 11/29/10 15:28:02   Page 32 of 32